*Attorney Grievance Commission of Maryland v. Tamara Renee Good*, Miscellaneous Docket AG No. 66, September Term, 2014 & Miscellaneous Docket AG No. 8, September Term, 2015

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Respondent Tamara Renee Good violated the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in her capacity as a representative of Blaine White, Jeanne Delaney, Joseph Chester, Eriss Tubman, Cynthia Lewis, and Paul Newman. Good failed to perform legal services for clients after accepting a retainer, ignored clients' requests for updates, abandoned representation of clients without communication, and refused to respond to Bar Counsel during the course of its investigation. Such conduct violated MLRPC 1.1; MLRPC 1.2(a); MLRPC 1.3; MLRPC 1.4(a) and (b); MLRPC 1.5(a); MLRPC 1.15(a), (c), and (d); MLRPC 1.16(d); MLRPC 8.1(b); MLRPC 8.4(a), (c), and (d); and § 10-306 of the Maryland Code (1989, Repl. Vol. 2010), Business Occupations and Professions Article. Taken together, Good's violations warrant disbarment.

Circuit Court for Baltimore County
Case No.: 03-C-14-13449
Circuit Court for Baltimore County
Case No.: 03-C-15-004149

Argued: November 5, 2015

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 66

September Term, 2014

&

Misc. Docket AG No. 8

September Term, 2015

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

TAMARA RENEE GOOD

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Glenn T., Jr. (Retired,
    Specially Assigned),

JJ.

Opinion by Adkins, J.

Filed:  December 21, 2015

The Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed two Petitions for Disciplinary or Remedial Action ("petitions") against Respondent Tamara Renee Good ("Good") on August 28, 2014 and January 7, 2015. Bar Counsel charged Good with violating the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") in her capacity as a representative of Blaine A. White, Jeanne P. Delaney, Joseph A. Chester, III, Eriss Tubman, Cynthia Lewis, and Paul D. Newman. Specifically, Bar Counsel alleged that Good violated the following rules: (1) MLRPC 1.1 (Competence); (2) MLRPC 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer); (3) MLRPC 1.3 (Diligence); (4) MLRPC 1.4 (Communication); (5) MLRPC 1.5 (Fees); (6) MLRPC 1.15 (Safekeeping Property); (7) MLRPC 1.16 (Declining or Terminating Representation); (8) MLRPC 8.1 (Bar Admission and Disciplinary Matters); and (9) MLRPC 8.4 (Misconduct). In addition, Bar Counsel alleged that Good violated § 10-306 of the Maryland Code (1989, Repl. Vol. 2010), Business Occupations and Professions Article.

Pursuant to Maryland Rule 16-752(a), we referred the petitions to the Honorable Nancy M. Purpura ("hearing judge") of the Circuit Court for Baltimore County to conduct an evidentiary hearing and make findings of fact and conclusions of law. Good did not attend the hearings conducted on April 2, 2015 and August 21, 2015. Following the hearings, Judge Purpura issued findings of fact and conclusions of law, in which she found by clear and convincing evidence that Good violated MLRPC 1.1; MLRPC 1.2(a); MLRPC 1.3; MLRPC 1.4(a) and (b); MLRPC 1.5(a); MLRPC 1.15(a), (c), and (d); MLRPC 1.16(d); MLRPC 8.1(b); MLRPC 8.4(a), (c), and (d); and § 10-306 of the Maryland Code, Business

Occupations and Professions Article. Neither Bar Counsel nor Good filed exceptions to the hearing judge's findings of fact or conclusions of law. Good did not appear before us for oral argument as to sanction. We issued a per curiam order on November 6, 2015, disbarring Good immediately from the practice of law. We now explain the reasons for that order.

**THE HEARING JUDGE'S FINDINGS OF FACT**

Tamara Good was admitted to the Maryland Bar on December 17, 2008, and maintained a practice in Towson, Maryland. Because the petitions here arose out of six separate client complaints, we set forth the hearing judge's factual findings pertaining to each client complaint.

**Complaint of Blaine A. White**

Before retaining Good, Blaine A. White and Virlynn D. Atkinson-White ("Mr. and Mrs. White") failed to make three months of mortgage payments to their mortgage lender, J.P. Morgan Chase Bank, NA ("Chase"). In May 2012, Mr. and Mrs. White retained Good to file a lawsuit against Chase. Mr. and Mrs. White paid Good a $500 retainer fee. In December 2012, Good filed a lawsuit against Chase in the United States District Court for the District of Maryland and the timeline of events as found by the hearing judge followed:

> On or about March 15, 2013, [Good] filed an Amended Complaint and Demand for Jury Trial. On March 15, 2013, [Good] filed a Motion for Extension of Time to file a Response to Chase's Motion to Dismiss. On March 29, 2013, Chase filed a Motion to Dismiss Mr. and Mrs. White's case. On April 16, 2013, [Good's] Motion for Extension was denied by the court, although the court allowed her to submit a response by April 17, 2013. On April 22, 2013, [Good] filed a Response to Chase's Motion.

On April 22, 2013, Chase filed a Motion for Rule 11 Sanctions. [Good] did not file a response to Chase's Motion for Sanctions.[1]

In June 2013, Good emailed Mr. White advising him that she was awaiting the court's opinion. Shortly thereafter, Mr. White emailed Good requesting a status update. Later that month, the federal judge granted Chase's motion to dismiss the amended complaint and Chase's motion for sanctions, but granted the Whites' motion for leave to file a second amended complaint. Good, however, never filed a second amended complaint on behalf of Mr. and Mrs. White.

Mr. and Mrs. White were unable to reach Good and obtain status updates regarding their case. Mr. and Mrs. White "repeatedly" attempted to telephone Good during the summer of 2013, but she did not return their phone calls. Mr. and Mrs. White also emailed Good in October and November 2013 requesting a status update of their case, but Good did not respond to these requests. The hearing judge found that despite the Whites' telephone calls and emails, Good "failed to inform Mr. and Mrs. White that their case was dismissed or file additional pleadings on their behalf."

---

[1] Internal citations to exhibits omitted. Although the hearing judge found that "[o]n March 15, 2013, [Good] filed a Motion for Extension of Time to file a Response to Chase's Motion to Dismiss," Bar Counsel's Petition for Disciplinary or Remedial Action states that "[o]n or about April 15, 2013, [Good] filed a Motion to Extend Time to File Response/Reply to Defendant's Motion to Dismiss." This minor inconsistency in the record, however, does not affect our analysis as to sanction.

## Complaint of Jeanne Delaney

In June 2010, Jeanne Delaney retained Good to file a bankruptcy petition on her behalf.  During Delaney's initial meeting with Good, she provided Good with a check in the amount of $1,329.00 for legal services.  Good's "total attorney's fees for Ms. Delaney's case, including the plan payments and the initial payment of $1,329.00 totaled $4,904.00."

After this meeting, the hearing judge found that:

> On June 21, 2010, [Good] filed Ms. Delaney's Chapter 13 bankruptcy petition in the United States Bankruptcy Court, District of Maryland (Case Number 10-23937).  Ms. Delaney continued to make Plan payments over the next three years.  On December 20, 2013 Ms. Delaney received a notice from the bankruptcy court informing her that her case would be closed without proper discharge.  [Good] failed to file the letter of discharge for Ms. Delaney.
>
> Shortly thereafter, Ms. Delaney repeatedly attempted to contact [Good] to no avail.  [Good] did not return Ms. Delaney's phone calls. Ms. Delaney sought assistance from Legal Aid and was able to complete the Debtor's Affidavit Requesting Discharge *pro se*.  On January 8, 2014, Ms. Delaney's bankruptcy was discharged.[2]

## Complaint of Joseph Chester

In October 2012, Joseph Chester retained Good to file a bankruptcy petition with the United States Bankruptcy Court, District of Maryland.  Chester is retired from the United States Postal Service and currently suffers from scleroderma and arthritis.  Chester paid Good a total of $1,481 in attorney's fees.

---

[2] Internal citations to exhibits omitted.

4

After filing a bankruptcy petition on behalf of Chester, Good telephoned Chester at 11:00 A.M. on October 15, 2013 to inform him that he needed to be present at a hearing at the bankruptcy court at 2:00 P.M. on the same day. Prior to October 15, 2013, Chester had not been provided sufficient notice that his presence was necessary at the bankruptcy court.

On October 17, 2013, the bankruptcy judge issued an order denying confirmation of the plan with leave to amend. The order required that an amended plan be filed on or before November 4, 2013. Good told Chester that she would be filing an amended plan before November 4, 2013. After receiving a copy of the bankruptcy court's order, Chester contacted Good "repeatedly" to remind her of the court's denying confirmation of the plan. Nonetheless, Good failed to respond to Chester's phone calls. Good then failed to file an amended plan with the bankruptcy court and Chester's case was dismissed in November 2013.

At Good's disciplinary hearing, Chester testified that she failed to pursue his bankruptcy to its conclusion. The hearing judge found that "[Good's] inaction resulted in the near dismissal" of Chester's bankruptcy until his new attorney began handling the matter.

**Complaint of Eriss Tubman**

In May 2010, Eriss Tubman retained Good to file a bankruptcy petition on her behalf. In June 2013, Tubman met with Good and gave her $1,271 to begin the preparation of the bankruptcy petition. Tubman paid $1,671 in total attorney's fees and filing fees for the bankruptcy. In September 2013, Good informed Tubman that she was having family

5

problems that prevented her from filing the bankruptcy petition. Later that month, Good filed the petition.

After the petition was filed, Tubman attended the meeting of creditors in October 2013. Good contacted Tubman in November 2013 and told her that she did not have to attend the confirmation hearing later that month. Tubman then attempted to contact Good on several occasions over a nine month period, but Good did not reply to these voicemail requests for information. In June 2014, Tubman sent Good a termination letter informing her that she had "called her several times a month since our last face to face meeting which was with the creditors" and wrote that their last telephone conversation had been on November 11, 2013. Tubman also filed a complaint with the Attorney Grievance Commission in June 2014.

Bar Counsel sent Good two letters in July 2014 regarding Tubman's complaint, but Good never replied to either of these letters. In September 2014, Good filed a motion to withdraw with the bankruptcy court. Good, however, did not provide Tubman with notice that she was withdrawing from her case.

### Complaint of Cynthia Lewis

Good met with Cynthia Lewis in 2012 to discuss Lewis's legal options related to her financial situation. In September 2013, Good filed a bankruptcy petition on behalf of Lewis. Lewis agreed to pay Good $3,000 in attorney's fees and filing fees under the retainer agreement. Lewis attended the meeting of creditors in October 2013 and her repayment plan was confirmed by the bankruptcy court in December 2013.

The hearing judge found that "[Good] failed to respond to Ms. Lewis's requests for information concerning her case." In June 2014, Lewis sent Good a letter regarding the status of her bankruptcy case and sent a second letter regarding Good's lack of communication. Good did not respond to either of these letters. In addition, the U.S. bankruptcy trustee wrote to Lewis that she had been unable to contact Good. Lewis was unable to retain new counsel for her bankruptcy matter because of her financial situation.

During AGC's investigation of Lewis's complaint, Good was similarly unresponsive:

> On July 24, 2014, Bar Counsel sent [Good] a letter notifying her of Ms. Lewis's complaint. [Good] failed to respond to Bar Counsel's initial letter. On August 13, 2014, Bar Counsel sent [Good] a second letter notifying her of Ms. Lewis's complaint. [Good] failed to respond to Bar Counsel's second letter.[3]

### Complaint of Paul Newman

In March 2009, Paul Newman, a disabled retiree, retained Good to file a patent application with the United States Patent and Trademark Office ("USPTO") and paid $2,500 in total attorney's fees.[4] Newman provided Good with original drawings of his design for her to file with his application. Although Good initially communicated with Newman, the hearing judge found that he later experienced difficulty contacting Good:

> [Good] provided invoices to Mr. Newman related to her purported work on Mr. Newman's USPTO application for

---

[3] Internal citations to exhibits omitted.

[4] From 2010 to 2011, Good also represented Newman in a matter involving the Equal Employment Opportunity Commission. The hearing judge in this attorney discipline proceeding noted that the Equal Employment Opportunity Commission matter "was eventually dismissed."

7

work performed in 2009.  In 2009, [Good] initially contacted Mr. Newman on a regular basis, but later ceased all communication sometime in 2013.

Beginning in 2009 through 2013, Mr. Newman continued to contact [Good] to arrange meetings with her, but she cancelled each of their scheduled meetings.[5]

In September 2014, Bar Counsel sent Good two letters notifying her of Newman's complaint, but she failed to respond to either of these letters.  Notably, the hearing judge also found that Good has neither provided Newman a refund of attorney's fees for the patent application nor returned copies of his original drawings.

### THE HEARING JUDGE'S CONCLUSIONS OF LAW

From the facts of the six complaints, the hearing judge concluded that Good violated MLRPC 1.1; 1.2(a); 1.3; 1.4(a) and (b); 1.5(a); 1.15(a), (c), and (d); 1.16(d); 8.1(b); and 8.4(a), (c), and (d).  The hearing judge also decided that Good violated § 10-306 of the Maryland Code, Business Occupations and Professions Article.

### Rule 1.1[6]

MLRPC 1.1 requires that an attorney provide competent representation.  As to Blaine White's complaint, the hearing judge found that "[Good] failed to accomplish what she was hired for: to complete the prosecution of [] White's [*sic*] case against Chase."  The

---

[5] Internal citations to exhibits omitted.

[6] **Rule 1.1 Competence**
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

judge concluded that Good's failure to file a second amended complaint after the district judge granted Chase's motion to dismiss constituted a lack of thoroughness and supported a violation of Rule 1.1.

The judge also determined that Good failed to provide competent representation of Joseph Chester when she failed to file an amended plan, which "largely led" to the dismissal of Chester's bankruptcy proceeding. The judge stated that this "inaction" violated Rule 1.1.

Regarding the complaints of Eriss Tubman, Cynthia Lewis, and Paul Newman, the hearing judge wrote:

> Competency includes, "at a minimum, the attorney's presence at any court proceeding for which he or she was retained, absent an acceptable explanation for that attorney's absence." *Attorney Grievance Commission v. Harris*, 366 Md. 376, 403, 784 A.2d 516, 531 (2001); *see Attorney Grievance Commission v. De La Paz*, 418 Md. at 534, 553-54, 16 A.3d at 181, 193 (2011) (finding that an attorney violated MLRPC 1.1 when he failed to appear before the court in his client's case). If an attorney "fails to act or acts in an untimely manner, resulting in harm to his or her client," generally this Court finds a violation of MLRPC 1.1. *Attorney Grievance Commission v. Thomas*, 440 Md. 523, 551, 103 A.3d 629, 646-647 (2014).

> [Good] failed to provide competent representation to both Ms. Tubman and Ms. Lewis in that she failed to continue to represent them during their Chapter 13 bankruptcy proceedings despite their requests for information. [Good] failed to act with the requisite legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation thereby violating RPC 1.1.

> [Good] also violated RPC 1.1 for Mr. Newman's case. [Good] did little to no discernable work on Mr. Newman's case after she was retained to file his USPTO application. Respondent's conduct supports a violation of RPC 1.1

9

## Rule 1.2(a)[7]

MLRPC 1.2(a) requires that an attorney abide by a client's decisions concerning the objectives of the representation and, when appropriate, consult with the client as to the means by which those objectives are to be pursued. Addressing Blaine White's complaint, the hearing judge concluded that Good violated Rule 1.2(a) when she failed to "fully

---

[7] **Rule 1.2 Scope of Representation and Allocation of Authority Between Client and Lawyer**

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

(c) A lawyer may limit the scope of the representation in accordance with applicable Maryland rules if (1) the limitation is reasonable under the circumstances, (2) the client gives informed consent, and (3) the scope and limitations of any representation, beyond an initial consultation or brief advice provided without a fee, are clearly set forth in a writing, including any duty on the part of the lawyer under Rule 1-324 to forward notices to the client.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

10

prosecute the White's [*sic*] case with their informed consent." The judge also found a violation of Rule 1.2(a) when Good failed to file papers seeking discharge for Jeanne Delaney in her bankruptcy proceeding. In addition, the hearing judge determined that Good violated Rule 1.2(a) when she failed to file an amended petition on behalf of Joseph Chester after he "repeatedly asked" her to do so. The judge wrote that Good "continually ignored [Chester's] entreaties to assist him" and that this conduct supported a violation of Rule 1.2(a).

The hearing judge concluded that Good's failure "to fully execute her clients' objectives" and her actions while representing Eriss Tubman, Cynthia Lewis, and Paul Newman constituted a violation of Rule 1.2(a). The judge pointed to Good's failure to provide Tubman with information concerning her bankruptcy as well as her decision to withdraw from Tubman's case without first consulting her client as support for a Rule 1.2 violation. The hearing judge highlighted Good's failure to respond to requests for information by Lewis and her performing almost no legal services concerning Newman's patent application as additional violations of Rule 1.2.

### Rule 1.3[8]

MLRPC 1.3 stipulates that a "lawyer shall act with reasonable diligence and promptness in representing a client." The hearing judge concluded that Good's failure to file a response to Chase's motion to dismiss within the time specified by the court, failure

---

[8] **Rule 1.3 Diligence**
  A lawyer shall act with reasonable diligence and promptness in representing a client.

to respond to Chase's motion for sanctions, and failure to inform the Whites that they had leave to file a second amended complaint before she "abandon[ed]" their case constituted a violation of Rule 1.3. The judge determined that Good also violated Rule 1.3 when she failed to file papers seeking discharge, which "could have resulted in the dismissal" of Jeanne Delaney's bankruptcy.

Further, the hearing judge found that Good failed to represent Joseph Chester with reasonable diligence and promptness when she failed to file an amended plan as ordered by the bankruptcy court, which resulted in the dismissal of Chester's bankruptcy. The judge also concluded that Good violated Rule 1.3 when she initially filed bankruptcy petitions on behalf of Eriss Tubman and Cynthia Lewis but "failed to complete the representation." Finally, the judge cited Good's deficient representation of Paul Newman in his patent application as another violation of Rule 1.3.

### Rule 1.4(a) and (b)[9]

MLRPC 1.4 mandates that attorneys communicate with their clients. The hearing judge identified many instances in which Good failed to act in accordance with this rule.

---

[9]**Rule 1.4 Communication**
    (a) A lawyer shall:
        (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
        (2) keep the client reasonably informed about the status of the matter;
        (3) promptly comply with reasonable requests for information; and
        (4) consult with the client about any relevant limitation on the lawyer's conduct when the

As to the complaint of Blaine White, the judge concluded that Good violated Rule 1.4 "by failing to respond to both Mr. and Mrs. White's separate requests for information regarding their case." The judge explained that "Mr. and Mrs. White frequently contacted [Good], but she failed to respond to any of their phone calls or emails." Additionally, the judge concluded that Good's failure to "communicate to her clients that there was a need to file a [s]econd [a]mended [c]omplaint" supported a finding of a Rule 1.4 violation.

The judge also concluded that Good violated Rule 1.4 when she "failed to return [Jeanne] Delaney's phone calls regarding requests for updates concerning her case." In addition, the judge concluded that Good initially communicated with Joseph Chester, but "as time progressed," Good "failed to communicate with him regarding updates concerning his case." The judge stated that Good's behavior denied Chester the "opportunity to make informed decisions regarding his representation." The judge also found that Good "repeatedly failed to communicate" with Eriss Tubman, Cynthia Lewis, and Paul Newman: "[Good] failed to respond to her clients' requests for information and failed to update them on the status of their legal matters in violation of RPC 1.4."

---

lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

MLRPC 1.5(a) provides that a "lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." Regarding the complaint of Blaine White, the hearing judge concluded Good violated Rule 1.5 and explained:

> Good billed a flat fee of $500.00, which on its face was not an excessive fee. However, the court finds that [Good's] overall billing charges were unreasonable, considering her inability to complete Mr. and Mrs. White's case.
>
> Part (4) of RPC 1.5(a) contemplates the amount of fees involved and the results obtained, which is perhaps the most glaring example of why [Good's] billing was excessive. [Good] failed to complete the legal matter for which she was hired, with the exception of the initial and amended filing of the complaint.

---

[10] **Rule 1.5 Fees**
> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> > (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> > (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
> > (3) the fee customarily charged in the locality for similar legal services;
> > (4) the amount involved and the results obtained;
> > (5) the time limitations imposed by the client or by the circumstances;
> > (6) the nature and length of the professional relationship with the client;
> > (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> > (8) whether the fee is fixed or contingent.

The judge also concluded that Good violated Rule 1.5 while representing Jeanne Delaney. The judge reasoned that Good was paid $4,904 to complete Delaney's bankruptcy yet "failed to perform the legal services for which she was retained and therefore was not entitled to the entire $4,904.00 fee." As to Joseph Chester's complaint, the judge stated that Good's "failure to pursue [Chester's bankruptcy] to its conclusion resulted in her obtaining an excessive fee" and concluded that this violated Rule 1.5.

Additionally, the hearing judge concluded that Good violated Rule 1.5 in her representation of Eriss Tubman, Cynthia Lewis, and Paul Newman. The judge cited our recognition that fees charged when little or no work is performed are unreasonable fees under Rule 1.5(a) and offered the following support for her conclusion:

> According to [Good's] retainer agreement, [Good] was hired by Ms. Lewis for:
>
> > a. Analysis of the debtor's financial situation and rendering advice to the debtor in determining whether to file a petition in bankruptcy and if so under which Chapter of Bankruptcy.
> > b. Preparation and filing of any petition, schedules, statement of financial affairs, and plan which may be required; and
> > c. Representation of the debtor at the initial meeting of creditors and confirmation hearing, and any adjourned hearings thereof.
>
> [Good] did not adhere to the terms of her representation agreement in its entirety for Ms. Lewis. [Good's] failure to communicate with the bankruptcy trustee in Ms. Lewis's case violated both (b) and (c) of her representation agreement. She also failed to earn her attorney's fees for Ms. Tubman's and Mr. Newman's cases.[11]

---

[11] Internal citation to exhibits omitted.

15

## Rule 1.15(a), (c), and (d)[12]

MLRPC 1.15 requires attorneys to maintain their clients' property in safekeeping.

The hearing judge found that Good "initially provided records of transactions" for Blaine

White, but after June 2013, "failed to provide any information related to the safekeeping

of Mr. and Mrs. White's funds." Likewise, the judge concluded that Good violated Rule

---

[12] **Rule 1.15 Safekeeping Property**

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

\* \* \*

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.
(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

1.15 when, in late 2013, she "failed to provide any information related to the safekeeping of [Joseph] Chester's funds" despite initially providing records of transactions for Chester.

Regarding the complaints of Eriss Tubman, Cynthia Lewis, and Paul Newman, the judge concluded that Good violated Rule 1.15(a), (c), and (d). The judge wrote:

> [Good] failed to return unearned attorney's fees or provide records for her compensation in violation of RPC 1.15(a). [Good] did not maintain records and she kept unearned attorney's fees in each clients' matter.
>
> ***
>
> [Good] did not obtain informed consent from Ms. Tubman, Ms. Lewis and Mr. Newman to keep unearned attorney's fees and [did] not return them to her clients in violation of RPC 1.15(c).
>
> ***
>
> [Good's] failure to promptly deliver unearned legal fees to Ms. Tubman, Ms. Lewis and Mr. Newman after she ostensibly withdrew from their cases violates RPC 1.15(d).

### Rule 1.16(d)[13]

MLRPC 1.16 requires attorneys to protect their clients' interests when declining or terminating representation. The hearing judge determined that Good violated Rule 1.16(d)

---

[13] **Rule 1.16. Declining or Terminating Representation**
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

17

when she failed to return client files to Eriss Tubman, Cynthia Lewis, and Paul Newman. Specifically, the judge highlighted Good's failure to return Newman's original drawings related to his patent application. The judge also identified Good's failure "to notify Ms. Tubman that she was withdrawing from her bankruptcy case, prior to filing a Motion to Withdraw" in concluding that Good violated Rule 1.16(d).

## Rule 8.1(b)[14]

MLRPC 8.1 prohibits attorneys from failing to respond to inquiries for information from a disciplinary authority. The hearing judge concluded that Good violated Rule 8.1(b) when she "failed to respond to any of Bar Counsel's letters related to the complaints filed by [Eriss] Tubman, [Cynthia] Lewis, and [Paul] Newman."

## Rule 8.4(a), (c), and (d)

MLRPC 8.4 provides in part:

> It is professional misconduct for a lawyer to:
> (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct,

---

[14] **Rule 8.1 Bar Admission and Disciplinary Matters**
An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact . . . .
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

18

knowingly assist or induce another to do so, or
do so through the acts of another;

\*\*\*

(c) engage in conduct involving dishonesty,
fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the
administration of justice . . . .

The hearing judge concluded that Good's violations of the MLRPC in representing

Blaine White, Jeanne Delaney, Joseph Chester, Eriss Tubman, Cynthia Lewis, and Paul

Newman established a violation of Rule 8.4(a).

The judge determined that Good violated Rule 8.4(c) and (d) when she failed to

provide competent legal services to Mr. and Mrs. White after being retained by them.

Similarly, the judge concluded that Good violated Rule 8.4(c) and (d) when representing

Jeanne Delaney:

> [Good] failed to act on Ms. Delaney's behalf after both the
> bankruptcy court and Ms. Delaney informed her that Ms.
> Delaney's bankruptcy would be dismissed without [Good]
> taking action to file an affidavit on her behalf.  [Good] also
> retained Ms. Delaney's entire fee for a matter that she did not
> complete.  Such behavior violated RPC 8.4(c).
>
> [Good's] indifference to Ms. Delaney's precarious
> time-sensitive filing that could have resulted in the dismissal
> of her case, constituted conduct prejudicial to the
> administration of justice, in violation of RPC 8.4(d).

In addition, the judge concluded that Good's promising to file an amended plan on

Joseph Chester's behalf but failing to do so constituted a violation of Rule 8.4(c).  The

judge also concluded that Good violated Rule 8.4(d) when she "fail[ed] to prosecute"

Chester's bankruptcy and noted that the "negligent handling" of this matter resulted in the dismissal of Chester's bankruptcy.

Regarding the complaints of Eriss Tubman, Cynthia Lewis, and Paul Newman, the hearing judge found that:

> [Good's] failure to return unearned attorney's fees after not performing the legal services for which she was compensated for by Ms. Tubman, Ms. Lewis, and Mr. Newman violated RPC 8.4(c). [Good] additionally failed to return Mr. Newman's original drawings to him after his repeated requests in violation of both 8.4(c) and 8.4(d). [Good's] abandonment of her clients further demonstrates a clear violation of Rule 8.4(d).

**Section 10-306 of the Maryland Code, Business Occupations and Professions Article**

Section 10-306 of the Maryland Code, Business Occupations and Professions Article provides that a "lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." The hearing judge concluded that Good violated § 10-306 in her handling of unearned attorney's fees in the Eriss Tubman, Cynthia Lewis, and Paul Newman matters. The judge explained that:

> [Good] did not refund unearned attorney's fees to either Ms. Tubman or Ms. Lewis for the portion of the work that she did not complete related to their bankruptcies. Additionally, [Good] failed to refund any attorney's fees for Mr. Newman's USPTO application matter for which she produced no tangible work. [Good's] conduct thereby was a misuse of trust money in violation of § 10-306 of the Maryland Code, Business Occupations and Professions Article.

20

**DISCUSSION**

As we recently explained:

> "In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Att'y Grievance Comm'n v. Bleecker*, 414 Md. 147, 167, 994 A.2d 928, 940 (2010) (citations omitted). "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous." *Att'y Grievance Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010) (quoting *Att'y Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006)). That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. *Id.* at 707, 4 A.3d at 964. In that regard, "[t]he hearing judge is permitted to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Guida*, 391 Md. at 50, 891 A.2d at 1095 (quoting *Att'y Grievance Comm'n v. Fezell*, 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000)).
>
> We review de novo the hearing judge's proposed conclusions of law. *Att'y Grievance Comm'n v. Ugwuonye*, 405 Md. 351, 368, 952 A.2d 226, 236 (2008). In other words, "the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court." *Att'y Grievance Comm'n v. Garfield*, 369 Md. 85, 97, 797 A.2d 757, 764 (2002) (quoting *Att'y Grievance Comm'n v. Thompson*, 367 Md. 315, 322, 786 A.2d 763, 768 (2001) (alteration in original)). In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a "clear and convincing" standard of proof. *Att'y Grievance Comm'n v. Siskind*, 401 Md. 41, 54, 930 A.2d 328, 335 (2007).

*Att'y Grievance Comm'n v. Tanko*, 427 Md. 15, 27–28, 45 A.3d 281, 288 (2012).

**Exceptions**

Neither Good nor Bar Counsel notes any exceptions to the hearing judge's findings of fact or conclusions of law. Thus, we shall accept the hearing judge's "findings of fact

as established for the purpose of determining appropriate sanctions." Md. Rule 16-759(b)(2)(A). In addition, based upon our review without deference to the hearing judge's conclusions of law, we agree that Good violated the following MLRPC provisions: Rule 1.1; Rule 1.2(a); Rule 1.3; Rule 1.4(a) and (b); Rule 1.5(a); Rule 1.15(a), (c), and (d); Rule 1.16(d); Rule 8.1(b); and Rule 8.4(a), (c), and (d). We also agree that Good violated § 10-306 of the Maryland Code, Business Occupations and Professions Article.

**Sanction**

As a general principle, when a lawyer is found to have engaged in misconduct, this Court sanctions the lawyer not to punish the lawyer, but to protect the public and to maintain confidence in the legal profession. *Att'y Grievance Comm'n v. Greenleaf*, 438 Md. 151, 163, 91 A.3d 1066, 1073 (2014). In attorney discipline cases, the appropriate sanction depends on the facts and circumstances of each case, including our assessment of aggravating and mitigating factors promulgated by the American Bar Association. *Att'y Grievance Comm'n v. Coppock*, 432 Md. 629, 648, 69 A.3d 1092, 1102 (2013). We also keep in mind that sanctions should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Att'y Grievance Comm'n v. Stein*, 373 Md. 531, 537, 819 A.2d 372, 375 (2003).

Here, Bar Counsel recommends that Good be disbarred. In its Recommendation for Sanction, Bar Counsel directs the Court's attention to five aggravating factors found in Standard 9.22 of the American Bar Association's Compendium of Professional

Responsibility Rules and Standards.[15]  Bar Counsel points to Good's dishonest or selfish

motive (Standard 9.22(b)), her pattern of misconduct (Standard 9.22(c)), her multiple

offenses (Standard 9.22(d)), her failure to respond to requests during the disciplinary

process (Standard 9.22(e)), and the vulnerability of the victims affected by the conduct

(Standard 9.22(h)).  Indeed, the hearing judge found by clear and convincing evidence that

Good's conduct fell within these aggravating factors.  Consequently, these factors support

a sanction of disbarment.

When determining the appropriate sanction, we must also consider any mitigating

factors.  *Att'y Grievance Comm'n v. Roberts*, 394 Md. 137, 165, 904 A.2d 557, 574 (2006)

("The appropriate sanction depends on the facts and circumstances of each case, including

any mitigating factors."); *see Coppock*, 432 Md. at 648, 69 A.3d at 1102.  The hearing

---

[15] Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution;
(k) illegal conduct, including that involving the use of controlled substances.

American Bar Association, Compendium of Professional Responsibility Rules and Standards, Standards for Imposing Lawyer Sanctions § 9.22 (1992).

judge in this proceeding found no mitigating factors, and there is no reason to upset that finding. *See Att'y Grievance Comm'n v. West*, 378 Md. 395, 411, 836 A.2d 588, 597 (2003) ("On review, we keep in mind that the findings of the trial judge are *prima facie* correct and will not be disturbed unless clearly erroneous.").

Pertaining to Good's failure to communicate with her clients, her egregious abandonment of client cases, her repeated ignoring of clients' requests for status updates, and her failure to return unearned fees as well as original design drawings in a patent application matter, we are guided by our holding in *Attorney Grievance Commission v. Heung Sik Park*, 427 Md. 180, 46 A.3d 1153 (2012). In that case, we held that:

> [D]isbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees.

*Id.* at 196, 46 A.3d at 1162. Good's conduct while representing Blaine White, Jeanne Delaney, Joseph Chester, Eriss Tubman, Cynthia Lewis, and Paul Newman fits well within the dictates of *Park*.

Accordingly, we conclude that disbarment is the appropriate sanction. For this reason, we entered the November 6, 2015 per curiam order disbarring Tamara Renee Good.

24