*Attorney Grievance Commission v. Rhonda I. Framm*, Misc. Docket AG No. 73, September Term 2014

**ATTORNEY GRIEVANCE COMMISSION — DISCIPLINE — DISBARMENT —** Respondent, Rhonda I. Framm, violated Maryland Lawyers' Rules of Professional Conduct 1.1; 1.2(a); 1.4(a) and (b); 1.5; 1.7; 1.15; 3.3(a); and 8.4(a), (c), and (d), as well as Maryland Rule 16-606.1. These violations stemmed from Respondent's representation of a client with diminished capacity, specifically her failure to represent her client competently, diligently, honestly, and with adequate communication. Respondent also made numerous misrepresentations to the court for her own financial gain. Disbarment is the appropriate sanction for Respondent's misconduct.

Circuit Court for Baltimore County
Case No. 03-C-14-013918
Argued: February 4, 2016
Reargued: June 2, 2016

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 73

September Term, 2014

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

RHONDA I. FRAMM

Barbera, C.J.,
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

Opinion by Barbera, C.J.

Filed: August 24, 2016

*Battaglia, J., now retired, participated in the initial hearing and conference of the case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the rehearing, decision, and adoption of this opinion.

Petitioner, the Attorney Grievance Commission of Maryland ("Commission"), filed in this Court on December 15, 2014, a Petition for Disciplinary or Remedial Action against Respondent, Rhonda I. Framm. The Commission charged Respondent with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (competence); 1.2 (scope of representation); 1.3 (diligence); 1.4 (communication); 1.5 (fees); 1.7 (conflict of interest); 1.15 (safekeeping property); 3.3 (candor toward the tribunal); 8.4(a), (c), and (d) (misconduct), and Maryland Rule 16-606.1 (attorney trust account record-keeping)[1]. Those charges arise from Respondent's representation of Robert L. Wilson and her subsequent suit against Mr. Wilson for attorney's fees. On December 16, 2014, this Court transmitted the matter to the Circuit Court for Baltimore County and designated the Honorable John J. Nagle, III ("the hearing judge") to conduct an evidentiary hearing and make findings of fact and conclusions of law.

The hearing judge presided over a hearing on June 1, 2, and 3, 2015, at which Respondent testified and presented evidence. On September 1, 2015, the hearing judge issued written findings of fact and conclusions of law, concluding that Respondent violated MLRPC 1.4, 1.7, 1.15, 3.3, 8.4(a) and (c), and Maryland Rule 16-606.1(a), but did not violate MLRPC 1.1, 1.2, 1.3, or 1.5. The hearing judge drew no conclusion on the charged violation of MLRPC 8.4(d).

---

[1] The Maryland Lawyers' Rules of Professional Conduct were revised and re-codified on July 1, 2016. In that process Maryland Rule 16-606.1 was renumbered, without substantive change, as Maryland Rule 19-407. Because we judge Petitioner's conduct against the extant law at the time of her actions, we refer to the now re-codified Maryland Rule 16-606.1 throughout.

Both Petitioner and Respondent filed exceptions. Bar Counsel, on behalf of Petitioner, excepted to the hearing judge's failure to make certain findings of fact and render a conclusion as to MLRPC 8.4(d). Petitioner also excepted to the hearing judge's conclusion that Respondent did not violate MLRPC 1.1, 1.2, 1.3, and 1.5 and the hearing judge's failure to find the presence of certain aggravating factors. Respondent challenged the hearing judge's conclusions that she violated any of the charged rules of professional conduct, aside from MLRPC 1.15 and Maryland Rule 16-606.1(a).

Following oral argument on February 4, 2016, we issued an Order of Remand instructing the hearing judge to make additional findings of fact and clarify his conclusions of law regarding MLRPC 3.3(a)(1), 8.4(c), and 8.4(d). Thereafter, the hearing judge issued Supplemental Findings and Conclusions of Law ("supplemental findings"), finding additional facts as set forth in Petitioner's exceptions, finding that Respondent's actions that constituted violations of MLRPC 3.3(a)(1) and 8.4(c) were done intentionally, and concluding that Respondent violated MLRPC 8.4(d).

Petitioner and Respondent each filed responses to the supplemental findings. Petitioner withdrew its exception to the hearing judge's failure to make findings of fact and render a conclusion as to MLRPC 8.4(d) and renewed its remaining exceptions. Respondent renewed her previously filed exceptions and excepted to all of the additional findings and conclusions made in the supplemental findings.

For reasons we shall explain, we agree with the hearing judge that Respondent violated MLRPC 1.4; 1.7; 1.15; 3.3; and 8.4(a), (c), and (d); as well as Maryland Rule 16-606.1(a), but did not violate MLRPC 1.3. Moreover, we agree with Petitioner that

2

Respondent's misconduct also violated MLRPC 1.1, 1.2, and 1.5.

I.

The hearing judge made the following findings of fact by clear and convincing evidence.[2] Respondent was admitted to the Bar of the Court of Appeals of Maryland on December 1, 1981, and maintains a solo law practice in Baltimore County. Respondent's interaction with Robert L. Wilson began subsequent to a then-recently entered judgment of divorce in the Circuit Court for Baltimore County before the Honorable Sherrie R. Bailey ("the divorce case"). On June 17, 2010, Mr. and Mrs. Wilson, through their respective counsel, had negotiated the terms of a settlement agreement in the divorce case, in which, relevant here, Mr. Wilson would pay Mrs. Wilson $55,000 plus interest over the next five years or $50,000 within sixty days. Judge Bailey accepted the settlement agreement and entered accordingly a judgment of absolute divorce.

Mr. Wilson first met Respondent for an initial consultation on June 23, 2010, to assist him in vacating the divorce judgment because he did not understand the settlement agreement and was dissatisfied with its terms. He retained Respondent on June 24, 2010. Mr. Wilson signed a retainer agreement providing that he would pay an initial retainer of $10,000 and Respondent would bill at an hourly rate of $425. On June 25, 2010, Mr.

---

[2] We have combined the hearing judge's initial findings and supplemental findings in this discussion. In some instances the hearing judge's findings are based on his having discredited Respondent's version of events over that of other witnesses whose testimony the judge credited. We have also included additional information based upon the undisputed evidence in the record. *See Attorney Grievance Comm'n v. Gray*, 436 Md. 513, 517 n.3 (2014) (supplementing the hearing judge's findings of fact with undisputed information adduced at the disciplinary hearing).

Wilson paid Respondent $10,125. Respondent admitted that she failed to create and maintain records of Mr. Wilson's payments and consequently conceded that she violated Maryland Rule 16-606.1(a).

Mr. Wilson typically sought and received help from his friend, Sandra McLean-Stewart ("Ms. Stewart"), and his cousin, Kevin Griggs, in understanding complex information, including legal documents. As described by Mr. Griggs, Mr. Wilson was able to understand "not too complicated matters" if they were broken down and explained slowly. Ms. Stewart accompanied Mr. Wilson to one of the three initial meetings with Respondent, but not the meeting at which he signed the retainer agreement.

*Divorce Case: Psychological Evaluation and Motion to Vacate*

After consulting with Mr. Wilson, Respondent concluded that Mr. Wilson had significant claims to a portion of Mrs. Wilson's marital property. Respondent also recognized that Mr. Wilson had a diminished capacity to understand information and explained to him that, although vacating the settlement agreement underlying the divorce judgment would be difficult, he might be successful if he could prove that he was incapacitated. Respondent referred Mr. Wilson to a psychologist, Morris S. Lasson, Ph.D., P.A., to determine whether there were sufficient grounds for Mr. Wilson to file a motion to vacate the settlement agreement on the ground of incapacity.

On June 28, 2010, Dr. Lasson conducted an initial evaluation of Mr. Wilson and concluded in a written report that Mr. Wilson had a neuro-cognitive disorder that impaired his ability to comprehend complex information. Dr. Lasson noted that Mr. Wilson suffered a stroke around 1964 that affected his speech and memory. Dr. Lasson explained in his

4

report:

> [Mr. Wilson]'s physical appearance was satisfactory. At the same time, his orientation to time, person and place was erratic. He had difficulty absorbing details and showed lapses of attention. He was unable to maintain concentration explaining, "I need time to think it out." Mr. Wilson recited the alphabet incorrectly on his fingers. He did not know the name of the U.S. president nor was he aware of today's date. He showed both expressive and receptive aphasia and speech stammering. His memory was flawed. He showed difficulty with encoding, retrieval and focusing skills. This man cannot process information fluidly and has sensory integration problems.
>
> With reasonable psychological certainty, Robert Wilson has a neuro-cognitive disorder and cannot be held responsible to fully understand complex information and details.

On July 1, 2010, Respondent, on behalf of Mr. Wilson, filed a motion to vacate the divorce judgment and attached Dr. Lasson's report. In the motion, Respondent argued that Mr. Wilson lacked the capacity to understand the settlement agreement and consequently could not consent to it. Respondent further requested an extension of time for a complete psychological evaluation of Mr. Wilson to determine whether he required a guardian. Mrs. Wilson, through her attorney, Diana Denrich, filed a response in opposition to the motion to vacate the judgment.

Dr. Lasson conducted a complete evaluation of Mr. Wilson and issued a report, dated August 9, 2010, in which he opined that Mr. Wilson should have a legal guardian. In the August 2010 report, Dr. Lasson explained that Mr. Wilson has a cognitive impairment that affects "his ability to understand and comprehend both the written and spoken word. He should be counseled constantly not to sign any documents and, even in a verbal encounter, he should have guidance and direction to be absolutely certain that he understands to the best of his ability[.]" Dr. Lasson also stated that, "[w]hen asked to count

5

from 20 to 0 backwards, [Mr. Wilson] forgot specific numbers." On August 16, 2010, Respondent wrote to Ms. Denrich to explain that she was in the process of having a guardian appointed for Mr. Wilson. Respondent attached to that correspondence Dr. Lasson's August 2010 report.

*Guardianship Case: The First Petition*

On April 20, 2011, Respondent filed a Petition for Appointment of Guardian of the Property of Robert Wilson in the Circuit Court for Baltimore County ("the guardianship case"). In that petition, Respondent listed Mr. Wilson as the Petitioner and named Mr. Griggs as the person Mr. Wilson wished to be appointed as his guardian. Respondent attached certificates from Dr. Lasson and Mr. Wilson's treating physician, Beth Marcus, M.D., to show that Mr. Wilson had capacity to consent to a guardian. Those certificates were not verified and did not include the doctors' full names, qualifications, history with Mr. Wilson, or opinions as to the cause and extent of his disability.

Two days later, the Circuit Court rejected the petition because it did not comply with Maryland Rule 10-301 and the certificates did not comply with Maryland Rule 10-202. Before the hearing judge, Respondent testified that she did not receive the court's rejection until it was produced in the disciplinary investigation. Yet, by August 4, 2011, Respondent had known that the petition ("the first petition") had been rejected, as she drafted a new petition for guardianship naming Mr. Griggs as the Petitioner. Mr. Griggs signed and returned the new petition to Respondent on August 10, 2011. Respondent, however, did not file that petition ("the second petition") until November 2011.

*Divorce Case: Petition for Civil Constructive Contempt*

6

Meanwhile, on October 26, 2011, Mrs. Wilson, having received no communication from Respondent for more than a year after the filing of the motion to vacate the judgment of divorce, filed, through her counsel, Ms. Denrich, a Petition for Civil Constructive Contempt seeking to advance the case and obtain a hearing before Judge Bailey on the motion to vacate.

On November 2, 2011, the Circuit Court issued a Show Cause Order why Mr. Wilson should not be found in contempt. Respondent mailed Mr. Wilson a copy of the Order on November 8, 2011, and stated in a cover letter that Mr. Wilson had to pay her $7,500 to answer the petition and defend him at the hearing. Mr. Wilson paid the requested amount. Later that month, Respondent filed a motion to strike the petition for contempt and, insofar as the record reflects, there was no further action taken on the petition and Mr. Wilson ultimately was not held in contempt.

*Guardianship Case: The Second Petition*

On November 18, 2011, Respondent filed the second petition for guardianship, this time naming Mr. Griggs as the Petitioner. A few days later, the Circuit Court rejected the second petition because once again the physicians' certificates failed to comply with the applicable rules. On January 10, 2012, Respondent filed amended certificates. The court thereafter accepted that petition.

On January 17, 2012, the court appointed Katherine Linzer, Esq. to represent Mr. Wilson in the guardianship proceeding. On March 14, 2012, Ms. Linzer, on behalf of Mr. Wilson, filed an answer in opposition to the petition. In the answer, Mr. Wilson denied that he was disabled and requested that the petition be dismissed. Attached to the answer

7

was a certificate from Mr. Wilson's treating physician, Dr. Marcus, attesting to his capacity to understand certain legal documents.

On April 10, 2012, Respondent, on behalf of Mr. Griggs, filed an opposition to the answer arguing that Mr. Wilson is incapable of making decisions on his own and requires a guardian to act on his behalf. Respondent asserted that, "contrary to the assertions made by attorney Katherine Linzer on Mr. Wilson's behalf, Mr. Wilson suffers from a mental disability that his psychologist states causes cognitive and processing deficiencies that render Mr. Wilson incapable of both comprehending and making decisions on his own." Respondent also argued that "Mr. Wilson presently cannot sufficiently process nor make decisions concerning the management of his property and investments when [the] same involve holding several facts in [his] mind," nor is it "clear that Mr. Wilson would even have sufficient capacity to designate a power of attorney."

The Circuit Court issued a writ of summons to Mr. Wilson and scheduled trial for June 26, 2012. Respondent sent Mr. Griggs a letter dated May 16, 2012, informing him of the guardianship trial and attaching the writ of summons.

Mr. Griggs and Mr. Wilson received conflicting advice from Ms. Linzer and Respondent. Ms. Linzer advised them that, if a guardian were appointed, Mr. Wilson would lose his ability to make financial decisions. In contrast, Respondent advised that Mr. Wilson would retain some of his rights even if Mr. Griggs became his guardian. Mr. Griggs and Mr. Wilson decided that they no longer wanted to pursue the guardianship. On June 1, 2012, Mr. Griggs faxed Respondent a hand-written letter notifying her that he wanted to withdraw the guardianship petition immediately. Upon receiving Mr. Griggs's

8

letter, on June 19, 2012, Respondent filed a motion to withdraw the guardianship petition, which was granted. Respondent never told Mr. Griggs or Mr. Wilson that there was a potential for a conflict of interest.

Ms. Linzer subsequently filed a request for attorney's fees, which Respondent did not oppose. On October 19, 2012, the court ordered Mr. Wilson to pay Ms. Linzer $1,120.06 in attorney's fees. Respondent took no further action to pursue the guardianship.

*Divorce Case: Dr. Lasson's Deposition*

Meanwhile, in December 2011, Judge Bailey scheduled a hearing on the motion to vacate the settlement agreement and judgment of divorce to be held on February 24, 2012. On January 5, 2012, Respondent informed Mrs. Wilson's counsel, Ms. Denrich, that she intended to introduce Dr. Lasson's reports at that hearing. Ms. Denrich objected to the introduction of Dr. Lasson's reports without his testimony. Respondent then unilaterally scheduled Dr. Lasson's deposition for February 7, 2012. On January 13, 2012, Respondent's paralegal sent an email to Ms. Denrich, informing her of the scheduled deposition and asking her to provide other dates if she was unavailable.

Ms. Denrich responded on January 16, 2012, advising that she was not available on February 7, 2012, and proposing six alternate dates prior to the hearing. Respondent refused to reschedule the deposition because Dr. Lasson was only available on February 7, 2012. On January 24, 2012, Ms. Denrich served by first-class mail a motion for a protective order seeking to stop Dr. Lasson's deposition and a motion to shorten time to respond. On February 2, 2012, Respondent opposed the motion for a protective order, but the court had no opportunity to rule on it prior to the scheduled deposition because the motion had not

been docketed.

On February 7, 2012, Respondent took Dr. Lasson's *de bene esse* deposition in Ms. Denrich's absence. Dr. Lasson testified that Mr. Wilson lacks the cognitive capacity to understand basic information. Dr. Lasson emphasized that Mr. Wilson had difficulty processing "basic information much less complicated ones." He explained that:

> [I]f you said, sign here, he would be able to do it. But if you tell him, now, before you sign here, I just want to explain to you what this is, and you get involved in some type of detailed explanation, I believe he would lose you and not understand. He may even be embarrassed to say that he doesn't understand at times. . . . But he would not be able to retain basic information that you have given him and just not understand what he has to do.

As to legal matters, Dr. Lasson said that, "if something is involved either legally or any other way with a lot of different facts and information, [Mr. Wilson] would have extreme difficulty processing that and understanding it."

At the hearing on February 24, 2012, Judge Bailey granted the motion for a protective order, prohibiting Respondent from using Dr. Lasson's deposition and postponing the matter to allow the parties to retake the deposition. The court did not enter a written order to that effect at that time. Between February 2012 and May 2012, Respondent did not reschedule Dr. Lasson's deposition, as she did not believe that she was obligated to do so because that responsibility was borne by Ms. Denrich at Mrs. Wilson's expense.

On May 4, 2012, upon Ms. Denrich's request, Judge Bailey entered an order that prohibited the use of Dr. Lasson's deposition, ordered Dr. Lasson to be deposed within sixty days at Ms. Denrich's convenience, required Mr. Wilson to pay the costs of the

deposition, and ordered that the failure to comply with the order would result in Dr. Lasson's being precluded from testifying at trial.

Mr. Wilson asked Respondent for clarification regarding that order. By letter dated May 31, 2012, Respondent wrote to Mr. Wilson: "As Dr. Lasson has to be paid before the deposition is to occur, and as Ms. Denrich was given at least one month's notice of [Dr. Lasson's] deposition (with no objection ever noted from her), I took Dr. Lasson's deposition as planned and sent her a copy of my questioning and Dr. Lasson's responses." The hearing judge found that this was an intentional misrepresentation to Mr. Wilson.

On May 30, 2012, Ms. Denrich and Respondent agreed to reschedule Dr. Lasson's deposition for August 8, 2012, despite being outside of the court's sixty-day timeframe. Yet, on June 18, 2012, Respondent noted Dr. Lasson's deposition by written questions.[3]

On July 3, 2012, Ms. Denrich filed a motion to strike the deposition by written questions. Respondent filed an opposition to the motion to strike, in which she claimed that she had tried to schedule a date for Dr. Lasson's second deposition after the court's May 4, 2012, order but "Ms. Denrich again would not supply dates on which she would commit to being available for [Dr. Lasson's] deposition." The hearing judge found that this statement was an intentional misrepresentation to the court because Ms. Denrich responded to Respondent and the parties agreed upon a new date. On July 24, 2012, Judge Bailey granted the motion to strike, ordered that Mr. Wilson was prohibited from using Dr.

---

[3] The deposition by written questions posed only two questions to Dr. Lasson. The first question asked whether the exhibits from the February 7, 2012, deposition were true and correct. The second question asked whether the opinions Dr. Lasson expressed during his deposition on February 7, 2012, were held to a reasonable degree of medical certainty.

11

Lasson's deposition or calling Dr. Lasson at trial, and awarded Mrs. Wilson $600 in attorney's fees, for which Respondent and Mr. Wilson were jointly and severally liable. On August 2, 2012, Respondent filed a motion to vacate and reconsider the court's order prohibiting Dr. Lasson's testimony and issuing sanctions.

*Divorce Case: Motion to Withdraw and Court Psychiatrist*

On August 21, 2012, Mr. Wilson discharged Respondent. In response, Respondent sent Mr. Wilson a letter informing him of her intent to withdraw as counsel in the divorce case. Respondent mailed to the court a motion to withdraw, but neither the court nor Ms. Denrich received the motion.

On September 14, 2012, Judge Bailey held a hearing on Respondent's motion to vacate the divorce judgment and her motion to vacate and reconsider Judge Bailey's order dated May 4, 2012.[4] At the outset of the hearing, Respondent gave Judge Bailey a copy of her motion to withdraw. In support of that motion, Respondent explained that Mr. Wilson has a diminished capacity and that, pursuant to MLRPC 1.14,[5] she had obtained a medical report stating that Mr. Wilson requires a guardian, and she had attempted to have one appointed. Respondent further argued, "I cannot represent Mr. Wilson because I do not

---

[4] The record before the hearing judge included the transcripts of all of the hearings in the divorce case and, as we later discuss, a trial conducted on Respondent's subsequent suit against Mr. Wilson for attorney's fees. The record reflects that the guardianship proceeded and concluded on the papers.

[5] MLRPC 1.14 governs the attorney-client relationship when the client has a diminished capacity. MLRPC 1.14 provides in pertinent part that "the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator, or guardian."

12

have any source of competent explanation of what he wants and if he has even understood what it is that he wants me to do for him." Respondent called Ms. Stewart and Mr. Griggs to testify that Mr. Wilson lacks capacity to handle his medical and financial decisions. Mr. Wilson, evidently changing his mind, testified that he still wanted Respondent to represent him. Judge Bailey stayed ruling on the motion to withdraw and ordered Mr. Wilson to be evaluated by a court psychiatrist within the Office of the Court Psychiatrist, Stephen W. Siebert, M.D., M.P.H.

On January 4, 2013, Dr. Siebert filed his evaluation with the court and reported that Mr. Wilson was not competent to enter into the settlement agreement. Dr. Siebert explained that Mr. Wilson has cognitive and memory impairments that affect his short-term memory and that Mr. Wilson "is unable to explain, in lay terms, the nature of the current legal dispute." Dr. Siebert further opined that,

> Mr. Wilson cannot retain verbal information and then repeat the content of the information after several minutes. My opinion is that this impairs his competency to understand and sign an agreement, even after this has been discussed or explained to him. My opinion is that he is not competent, at this time, to sign a settlement agreement regarding his property or alimony.

On February 13, 2013, at a hearing before Judge Bailey, Respondent renewed her motion to withdraw from the representation. Respondent stated: "I can't work with Mr. Wilson because there is no consistent strategy nor understanding of a strategy nor a continued ability to remember what decisions were made even five minutes ago[.]" Judge Bailey accepted Dr. Siebert's report and found that "Mr. Wilson is incompetent to enter into a legal agreement, a contractual agreement, or to enter into a settlement agreement or to even file a petition for divorce." Consequently, Judge Bailey granted Respondent's

13

motion to withdraw as well as the motion Respondent had filed on Mr. Wilson's behalf to vacate the judgment of absolute divorce. Judge Bailey, recognizing Mr. Wilson's incapacity, reconsidered and vacated her earlier award of sanctions against him.

*The Fee Case*

On July 30, 2013, after the divorce and guardianship cases had concluded, Respondent filed suit against Mr. Wilson for attorney's fees in the District Court of Maryland, sitting in Baltimore County ("the fee case"). Respondent testified before the District Court that Mr. Wilson owed her $30,000 plus pre-judgment interest—an amount reduced by $10,261.27, allegedly to satisfy Mr. Wilson's complaints about the guardianship case and to comply with the jurisdictional limit of the District Court.

From June 2010 to February 2013, Respondent had billed Mr. Wilson for a total of $58,748.77 in attorney's fees. And, from June 2010 to November 2011, Mr. Wilson paid Respondent $19,125. Although Respondent presented all of her invoices to the District Court, she claimed that she was not seeking payment of her fees from the guardianship case as a conciliatory gesture to Mr. Wilson given his complaints about her handling of that matter.

On August 8, 2013, Mr. Wilson, representing himself, filed a Notice of Intention to Defend. On August 20, 2013, Respondent asked Mr. Wilson to sign a Consent Judgment, which represented that Mr. Wilson was "of sound mind." Mr. Wilson refused.

Ms. Stewart and Mr. Griggs assisted Mr. Wilson in his defense. In response to an interrogatory question propounded by Respondent, Mr. Wilson answered that, in the divorce case, "Judge Bailey ruled that Mr. Wilson is incompetent to enter into a legal

14

agreement, a contractual agreement, or to enter into a settlement agreement or even file a petition for divorce."

The Honorable Marsha L. Russell presided over the trial concerning Respondent's claim for attorney's fees, which occurred on October 22, 2013. After hearing testimony, Judge Russell entered judgment in favor of Respondent for $30,000 with prejudgment interest of $5,029.93. To satisfy that judgment, Respondent garnished Mr. Wilson's accounts.

The hearing judge accepted Respondent's testimony at the disciplinary hearing concerning the reasonableness of her fees and expenses because Petitioner had not offered any evidence to the contrary. He found, though, that Respondent, who had testified at the trial before Judge Russell, had misrepresented Dr. Lasson's opinion of Mr. Wilson's mental capacity by testifying in the fee case that Dr. Lasson had concluded that Mr. Wilson "can certainly deal with his day-to-day events and simple contracts," and that Dr. Lasson's "report didn't indicate he couldn't understand normal contracts he entered into." Respondent also misrepresented that she "was aware that not only does Mr. Wilson have a fairly good capacity to understand agreements . . . but he has people who have resources[.]" The hearing judge found that Respondent in her testimony in the fee case, at best, "continually understated the extent to which Wilson had a serious and permanent cognitive disorder." The hearing judge found that Respondent's failure to testify specifically that Judge Bailey had found Mr. Wilson incompetent further contributed to her misrepresentation as to Mr. Wilson's capacity. The hearing judge rejected Respondent's argument that Judge Russell was made fully aware of Judge Bailey's finding because Mr.

15

Wilson had informed Judge Russell of this fact in his interrogatory answer.

The hearing judge also found that Respondent intentionally misrepresented to Judge Russell the circumstances surrounding Dr. Lasson's deposition. Respondent had testified in the fee case that she

> told the opposing counsel that since she didn't show up, if she wants to ask any questions, she certainly can and we'll be glad to reschedule. Opposing counsel then filed a motion for protective order asking not only that it not be included but that Mr. Wilson and I be sanctioned for going ahead with the deposition when she was not available. The court ordered that we retake the deposition with her present, and that we do that before the hearing occur[ed].

Respondent further misrepresented to Judge Russell that she usually provided Mr. Wilson with advice both orally and in writing to allow him to confer with Ms. Stewart or Mr. Griggs, and that Ms. Stewart was present when Mr. Wilson signed the retainer agreement, when she in fact was not.

The hearing judge found that "Respondent intentionally misrepresented to Judge Russell that she filed various 'motions in supporting the fairness of a court psychiatrist' and motions and pleadings regarding the records to be produced to Dr. Siebert in the Divorce Case," because, in fact, no such documents had been filed. Further, "Respondent intentionally misrepresented to Judge Russell that 'there was a hearing scheduled October 19, 2012, which was cancelled the day before the hearing, so we had to prepare for that and get everyone geared up for that[.]'" In fact the hearing on October 19, 2012, was cancelled no later than October 8, 2012. Respondent admitted to the hearing judge that her statement to Judge Russell was false.

The hearing judge found, in addition, that Respondent intentionally misrepresented

16

Dr. Siebert's opinion. Respondent had testified in the fee case that "Dr. Siebert thankfully agreed with us, and he said, 'this is way too complicated of an issue for this gentleman to be able to work through without assistance.'" The hearing judge found that, because Respondent knew the details of Dr. Siebert's report, she should have relayed his findings accurately. The hearing judge found as well that Respondent made misrepresentations by omitting relevant medical information, including Dr. Lasson's and Dr. Siebert's reports and Dr. Lasson's deposition testimony. Respondent had also failed to inform Judge Russell that she had filed an opposition to Mr. Wilson's answer to the second petition for guardianship.

Based upon those findings, the hearing judge concluded that Respondent violated MLRPC 1.4; 1.7; 1.15; 3.3; and 8.4(a), (c), and (d); and Maryland Rule 16-606.1(a), but did not violate MLRPC 1.1, 1.2, 1.3, or 1.5.

## II.

"In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Good*, 445 Md. 490, 512 (2015) (internal quotation marks omitted). We accept the hearing judge's findings of fact unless those findings are clearly erroneous. *Id.* "That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses." *Attorney Grievance Comm'n v. Tanko*, 427 Md. 15, 27 (2012). "The hearing judge is permitted to 'pick and choose which evidence to rely upon' from a conflicting array when determining findings of fact." *Id.* (alteration omitted) (quoting *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50 (2006)). We review the

17

hearing judge's legal conclusions *de novo* and thus render the ultimate decision as to an attorney's alleged misconduct. *Good*, 445 Md. at 512. We must therefore determine independently whether sufficient evidence in the record exists to support the hearing judge's conclusions of law under a "'clear and convincing' standard of proof." *Tanko*, 427 Md. at 27.

Both Petitioner and Respondent have filed exceptions to the hearing judge's findings of fact and conclusions of law. Given the number of exceptions presented, we address each exception as it relates to our *de novo* review of the hearing judge's conclusions of law.

### MLRPC 1.1

MLRPC 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The hearing judge concluded that Petitioner failed to prove a violation of MLRPC 1.1 by clear and convincing evidence. The hearing judge recognized that "there had to be a point in time . . . where Respondent should have advised Wilson, and documented such advice, that the costs of all of the respective litigation had reached a point where it was not feasible to continue." The hearing judge nevertheless rejected Petitioner's contention that Respondent was required to perform a cost-benefit analysis, and he concluded that Respondent did not violate MLRPC 1.1 by failing to do so. The hearing judge also concluded that Respondent's conduct in the divorce case, while aggressive, was sufficiently competent because she ultimately was successful in getting the divorce judgment vacated for Mr. Wilson. Likewise, the hearing

18

judge rejected Petitioner's contention that Respondent's deficient filings in the guardianship case rose to the level of a violation of MLRPC 1.1.

Petitioner takes exception to the hearing judge's conclusion that Respondent did not violate MLRPC 1.1. Petitioner points out that Respondent, among other failures, never conducted a cost-benefit analysis for Mr. Wilson and that Respondent's guardianship petitions were twice rejected by the court. Petitioner also asserts that Respondent's failure to identify a conflict of interest in the guardianship case and to advise Messrs. Wilson and Griggs to that effect "does not meet the bare minimum required of competent representation."

We sustain Petitioner's exception. The essence of competent representation under MLRPC 1.1 is adequate preparation and thoroughness in pursuing the matter. *Attorney Grievance Comm'n v. Blair*, 440 Md. 387, 401 (2014). Consequently, "[a]ttorneys remain potentially susceptible to violating MLRPC 1.1 notwithstanding they possess the requisite skill or knowledge to represent a client." *Attorney Grievance Comm'n v. Adams*, 441 Md. 590, 610 (2015). We agree with Petitioner that Respondent's mistakes and errors in judgment demonstrate a lack of competence, in violation of MLRPC 1.1. Respondent's failure to advise Mr. Wilson at any time during the representation that the cost of continuing to pursue litigation might vitiate any benefit he may receive ultimately does not reflect thorough and competent representation. *Cf. Attorney Grievance Comm'n v. Sutton*, 394 Md. 311, 323 (2006) (concluding that the respondent violated MLRPC 1.1 "by undertaking representation of [his client's] claim although respondent recognized from the beginning that the likelihood of success with [his client's] claim was limited" (internal quotation

19

marks omitted)). Respondent's abuses of discovery, which delayed the divorce proceedings and caused Dr. Lasson's testimony to be excluded entirely from the case, also demonstrate Respondent's failure to provide Mr. Wilson competent representation.

Similarly lacking in competence was Respondent's representation of Mr. Wilson and Mr. Griggs in the guardianship case. Respondent filed a petition for guardianship that wholly failed to comply with the Maryland Rules and only in her third attempt were the physicians' certificates accepted by the court. Respondent's evident failure to conduct even minimal research, which would have revealed the defects in her submissions and avoided multiple filings, violates MLRPC 1.1. *See Attorney Grievance Comm'n v. Davy*, 435 Md. 674, 698 (2013) (concluding that the respondent violated MLRPC 1.1 when "the bankruptcy court sent Davy three deficiency notices regarding the bankruptcy filing" because the respondent did not adequately research her case).

Further, Respondent's failure to recognize the inherent conflict of interest in representing Mr. Griggs in the guardianship case while remaining counsel to Mr. Wilson in the divorce case falls below the minimum standard of competence. *See Attorney Grievance Comm'n v. Olszewski*, 441 Md. 248, 266 (2015) ("We agree with the hearing judge that, on the facts of this case, 'a minimal threshold of competent representation was breached when [Respondent] agreed to represent one client against another[.]'" (alteration in original)).

In sum, we conclude that the facts found by the hearing judge present clear and convincing evidence that Respondent violated MLRPC 1.1.

**MLRPC 1.2**

20

MLRPC 1.2(a) provides that "a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued." The hearing judge noted that "what happened in the Guardianship Case could potentially have been avoided through better and more detailed communication between Respondent and Wilson." Evidently for this reason, the hearing judge concluded that Petitioner failed to prove that Respondent violated MLRPC 1.2(a) because Respondent, in filing the guardianship petition on behalf of Mr. Griggs, was "still ultimately attempting to advance Wilson's position in the Divorce Case."

Petitioner excepts to this conclusion. We agree with Petitioner that, by opposing Mr. Wilson's answer in the guardianship case, Respondent took a position that was directly contrary to that of her client. By definition, Respondent did not "abide by [her] client's decisions concerning the objectives of the representation." *See Attorney Grievance Comm'n v. Haley*, 443 Md. 657, 669 (2015) (concluding that the respondent violated MLRPC 1.2(a) by seeking primary physical custody of his client's children despite the client's instruction for shared physical custody). We disagree with the hearing judge that Respondent did not violate MLRPC 1.2(a) simply because the issues in the guardianship case might have been resolved through better communication. That Respondent's misconduct with respect to MLRPC 1.2(a) might overlap with another one of our rules of professional conduct does not remove that misconduct from its scope. We conclude that Petitioner proved a violation of MLRPC 1.2(a) by clear and convincing evidence.

**MLRPC 1.3**

MLRPC 1.3 provides that "[a] lawyer shall act with reasonable diligence and

21

promptness in representing a client." The hearing judge concluded that Respondent did not violate MLRPC 1.3. The hearing judge determined that the seven-month delay between the filing of the first and second petitions for guardianship did not establish a lack of diligence because proceedings in the divorce case were ongoing. Similarly, the hearing judge declined to conclude that Respondent violated MLRPC 1.3 in failing to file timely physicians' certificates because the Maryland Rules impose a "narrow timeframe" of twenty-one days from the time of the evaluation to the filing of the certificate.

Petitioner excepts to the hearing judge's conclusion. Petitioner argues that Respondent violated MLRPC 1.3 by failing both to advance the divorce case for almost one year after filing the motion to vacate and to file diligently petitions for guardianship that complied with the Maryland Rules. Petitioner also argues that Respondent's failure to communicate adequately, conduct a cost-benefit analysis, perform any research on Mr. Wilson's claims for Mrs. Wilson's marital property, and abide by the Maryland Rules and court orders with respect to Dr. Lasson's deposition violates MLRPC 1.3. Petitioner states, in sum, that "two years after [Respondent] was retained to represent Mr. Wilson, no guardian had been appointed and the only evidence in support of Mr. Wilson's motion to vacate the divorce judgment, namely Dr. Lasson's testimony, had been excluded due to the Respondent's misconduct."

We overrule Petitioner's exception. We are not persuaded that the time elapsed between the filing of the motion to vacate and Respondent's next advancement of Mr. Wilson's claims in the guardianship case, in itself, violates MLRPC 1.3. The remainder of Petitioner's arguments in support of its charge speak more to Respondent's violations of

22

other rules of professional conduct than a lack of diligence in violation of MLRPC 1.3.

## MLRPC 1.4

MLRPC 1.4 provides:

(a) A lawyer shall:
   (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
   (2) keep the client reasonably informed about the status of the matter;
   (3) promptly comply with reasonable requests for information; and
   (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge rendered conclusions of law on MLRPC 1.4 with respect to Respondent's overall representation of Mr. Wilson as well as her representation of Mr. Griggs in the guardianship case.

With respect to Respondent's representation of Mr. Wilson, the hearing judge concluded that Respondent violated MLRPC 1.4(b) but not MLRPC 1.4(a). The hearing judge determined that Respondent did not violate MLRPC 1.4(a) because she orally communicated with Mr. Wilson regarding the divorce and guardianship cases. In concluding that Respondent's representation of Mr. Wilson violated MLRPC 1.4(b), the hearing judge took judicial notice of Judge Bailey's determination that Mr. Wilson was "incompetent to enter into a legal agreement" and found that Mr. Wilson was a vulnerable adult. The hearing judge concluded consequently that Respondent violated MLRPC 1.4(b) by failing to communicate major events to Mr. Wilson in writing, which was necessary for

him to be able to understand and later recall that information.

With respect to Respondent's representation of Mr. Griggs, the hearing judge concluded that Respondent violated MLRPC 1.4(a) and (b). The hearing judge noted that Respondent did not explain her role as Mr. Griggs's attorney or the existence or appearance of a conflict of interest between Mr. Griggs and Mr. Wilson in the guardianship case. The hearing judge concluded that Respondent's failure to explain adequately the guardianship case deprived Mr. Griggs of the ability to make informed decisions.

Respondent takes exception to the hearing judge's conclusion that she violated MLRPC 1.4 in any respect in representing both Mr. Wilson and Mr. Griggs. Respondent asserts that she adequately communicated all facets of the guardianship case to Mr. Griggs and Mr. Wilson. As to Respondent's representation of Mr. Wilson, Respondent argues that the hearing judge erred in concluding that Mr. Wilson was a vulnerable adult because there was no competency hearing or expert testimony opining that Mr. Wilson was incompetent. She also contends that she was under no legal obligation to memorialize her advice in writing and therefore did not violate MLRPC 1.4(b).

We disagree with Respondent and overrule her exceptions. The hearing judge, having credited Mr. Griggs's testimony, found that Respondent never explained to Mr. Griggs that she was representing him and that a conflict of interest existed. Respondent has offered no basis for concluding that these findings are clearly erroneous. We reject, moreover, Respondent's contention that the hearing judge erred in concluding that Mr. Wilson was a vulnerable adult. Respondent improperly equates vulnerability with a judicial determination of incompetence. The hearing judge's finding of vulnerability was

24

related to the level of communication required to satisfy MLRPC 1.4, and that finding was not clearly erroneous.

We also agree with the hearing judge that Respondent violated MLRPC 1.4 by failing to put her advice to Mr. Wilson in writing. MLRPC 1.4(b) requires an attorney to communicate with a client "to the extent reasonably necessary to permit the client to make informed decisions." Consequently, to comply with MLRPC 1.4, an attorney may be required to alter the way he or she communicates with a client to ensure that the client is adequately informed. Respondent was aware of Mr. Wilson's difficulty understanding and retaining information and his reliance upon Ms. Stewart and Mr. Griggs to assist him. Given those circumstances, Respondent violated MLRPC 1.4 by failing to take reasonably necessary steps to ensure that Mr. Wilson would be able to understand her advice by memorializing it in writing.

Petitioner does not except to the hearing judge's conclusion that Respondent's representation of Mr. Wilson did not violate MLRPC 1.4(a). Based on our independent review of the judge's findings, we disagree with the hearing judge's conclusion. *See Attorney Grievance Comm'n v. Landeo*, 446 Md. 294, 330-31 (2016) (reversing the hearing judge's conclusion that the respondent did not violate MLRPC 1.5(a) in two client matters notwithstanding that Bar Counsel only took exception to that conclusion with respect to a third matter). The hearing judge's conclusion that Respondent violated MLRPC 1.4(a) by failing to inform Mr. Griggs of a potential conflict of interest equally violates MLRPC 1.4(a) with respect to Mr. Wilson. *See Olszewski*, 441 Md. at 267 ("We agree with the hearing judge that Respondent clearly violated Rule 1.4(a)(1) by failing to explain the

25

potential conflict of interest when he undertook joint representation of Mr. and Mrs. Ware.").

Respondent likewise violated MLRPC 1.4(a) in her representation of Mr. Wilson by intentionally misrepresenting to him that Ms. Denrich failed to object timely to Dr. Lasson's initial deposition.[6] *See Attorney Grievance Comm'n v. Shapiro*, 441 Md. 367, 385 (2015) ("The misrepresentation of the status of a case to a client constitutes a violation of MLRPC 1.4(a)."). That Respondent "at least orally communicated with Wilson" does not remedy her failure to communicate fully and honestly.

In sum, Respondent violated MLRPC 1.4(a) and (b) in connection with her representation of Mr. Wilson as well as her representation of Mr. Griggs.

### MLRPC 1.5

MLRPC 1.5(a) prohibits a lawyer from charging or collecting "an unreasonable fee or an unreasonable amount for expenses."[7] The hearing judge found that Petitioner failed to submit any evidence, particularly any expert testimony, proving that Respondent's fees were unreasonable. The hearing judge concluded that, although the Respondent's bills to Mr. Wilson were high, her bills were not unreasonable given the amount of time and effort

---

[6] The hearing judge found in connection with his conclusions of law regarding MLRPC 8.4(c) that Respondent had intentionally misrepresented that fact to Mr. Wilson, but the hearing judge did not refer to that finding in the judge's discussion of MLRPC 1.4. The hearing judge's finding that Respondent made that intentional misrepresentation to her client equally establishes a failure of communication in violation of MLRPC 1.4(a).

[7] MLRPC 1.5(a) details several factors to be considered when evaluating the reasonableness of an attorney's fee such as the time and labor required, the difficulty of the issues, and the skill necessary to resolve the client's problem.

Respondent expended to litigate the divorce and guardianship actions. The hearing judge further concluded that, even though Mr. Wilson should not have been charged for Respondent's errors, her conduct did not rise to the level of a violation of MLRPC 1.5(a).

Petitioner excepts to the hearing judge's factual finding and to the conclusion that Respondent did not violate MLRPC 1.5(a). Petitioner argues that Respondent's testimony sufficiently shows that her fees were unreasonable because Respondent admitted that she billed Mr. Wilson for her representation of Mr. Griggs, defective filings, and time spent on obtaining Dr. Lasson's deposition. Petitioner argues that, although Mr. Wilson ultimately obtained the result he wanted, that outcome "was not because of the Respondent's efforts, but rather despite the Respondent's misconduct." Petitioner argues that, aside from timely filing the motion to vacate, "Respondent failed to take any meaningful action to advance Mr. Wilson's claims."

Respondent counters that, based upon our decision in *Attorney Grievance Commission v. MacDougall*, 384 Md. 271 (2004), the reasonableness of her fees is established as a matter of law because the District Court entered judgment in her favor. We disagree. In *MacDougall*, we held that the respondent did not violate MLRPC 1.5(a) because a court had approved his attorney's fees and "[t]he parties agree[d] that the Respondent comported himself properly insofar as his taking of a fee for his services." *Id.* at 276, 280 (internal quotation marks omitted). We do not have that situation here, given the hearing judge's finding that Respondent eventually misled the District Court in her pursuit of those fees.

We sustain Petitioner's exception. Respondent charged Mr. Wilson $58,748.77 and

collected over $54,000 to vacate a $55,000 divorce judgment.[8] The hearing judge found that Respondent's fees were reasonable in light of "the immense scope of the time and effort that were ultimately incurred as a result of Respondent's representation." The record does not reasonably support that finding. Despite the sizeable fee and length of representation, the time and effort Respondent expended was due largely to her own misconduct in connection with both the divorce case and the guardianship action. *See Attorney Grievance Comm'n v. Brady*, 422 Md. 441, 459 (2011) (concluding that fees that are "wholly disproportionate, and unreasonable, in relation to the services" violate MLRPC 1.5(a)).

In the divorce case, Respondent charged Mr. Wilson for her work in procuring Dr. Lasson's testimony despite the fact that her discovery misconduct caused his testimony to be excluded. *See Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 277 (2004) (concluding that the respondent violated MLRPC 1.5(a) for charging a client "to respond to discovery motions" and court sanctions that resulted from the respondent's own misconduct). Other than timely filing the motion to vacate, Respondent's efforts in the divorce case focused largely on her motion to withdraw and her discovery misconduct. Indeed, it was not Respondent's actions that led to the outcome her client sought. Rather, the record demonstrates that Judge Bailey, on her own initiative, ordered a court psychiatrist to evaluate Mr. Wilson, and her analysis of that psychiatric report, in the absence of any argument by Respondent on the merits, led Judge Bailey to find that Mr.

---

[8] We arrive at that figure by taking together the $19,125 Mr. Wilson had paid Respondent by November 2011 and the judgment entered in favor of Respondent in the fee case.

28

Wilson lacked capacity to enter into the settlement agreement. In short, Respondent failed to take action commensurate with the fees she charged and accordingly violated MLRPC 1.5(a). *See Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 187 (2015) (explaining that when an attorney fails "to perform to any meaningful degree the legal services for which the fee was set initially, the fee becomes unreasonable with the benefit of hindsight").

Respondent further violated MLRPC 1.5(a) in connection with the fees she sought and obtained from Mr. Wilson in the guardianship action. She billed him for her representation of his legal adversary, Mr. Griggs. We cannot accept Respondent's position that her bills were fair and reasonable when she billed Mr. Wilson for filing a pleading that was in direct opposition of his position. *See Attorney Grievance Comm'n v. Manger*, 396 Md. 134, 143 (2006) (concluding that the respondent violated MLRPC 1.5(a) because he billed the client for conduct that did not advance the client's interests and for his failure to act competently). Respondent also violated MLRPC 1.5(a) by charging Mr. Wilson for her numerous defective filings in the guardianship action. *See Davy*, 435 Md. at 702 (concluding that the respondent violated MLRPC 1.5 by charging and collecting $10,000 to prepare a defective complaint). We agree with Petitioner that it was not necessary for an expert to testify that it was unreasonable for Respondent to charge and collect fees for filing defective pleadings, representing an adverse party, or violating the Rules and court orders. We accordingly conclude that Respondent violated MLRPC 1.5(a).

## MLRPC 1.7

MLRPC 1.7 prohibits a lawyer from representing a client "if the representation

29

involves a conflict of interest." MLRPC 1.7(a)(1) states that a conflict of interest exists when "the representation of one client will be directly adverse to another client[.]" The hearing judge concluded that Respondent violated MLRPC 1.7 because she represented Mr. Griggs in the second petition in the guardianship case in opposition to her current client, Mr. Wilson, whom she was representing in the divorce case. The hearing judge further noted that, even though it was arguably true that Mr. Griggs's and Mr. Wilson's interests were aligned at the outset, a clear conflict existed when Respondent filed an opposition against Mr. Wilson. The hearing judge determined that this conflict could not be waived.

Respondent takes exception to this conclusion. Respondent argues that no conflict of interest existed because, "[w]hile Respondent technically represented Mr. Griggs" in the second petition, "Mr. Griggs was an incidental beneficiary of Respondent's services, and Mr. Griggs' and Mr. Wilson's interests in that matter were at all times aligned." Respondent argues further that her client at all times was Mr. Wilson, not Mr. Griggs.

We overrule Respondent's exception. We agree with the hearing judge that Respondent's representation of Mr. Griggs in the guardianship case created a conflict of interest that could not be waived because Mr. Griggs and Mr. Wilson were in a directly adverse relationship. We do not subscribe to the contention that Mr. Griggs was a mere "incidental beneficiary" because his and Mr. Wilson's interests were in fact aligned. We have explained that the formation of an attorney-client relationship "does not require an explicit agreement," but rather may arise from the conduct of the parties. *See Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 175 (2003). The record reflects that

30

Respondent represented Mr. Griggs, and Respondent concedes that she "technically" represented him in the second petition for guardianship. Respondent should have become aware that a conflict existed when the court appointed counsel to represent Mr. Wilson and, certainly so, at the latest, when she filed an opposition to Mr. Wilson's answer to the petition. *See Olszewski*, 441 Md. at 267 (concluding "that Respondent's joint representation of Mr. and Mrs. Ware became a conflict of interest, at the very latest, when Respondent filed suit on behalf of Mr. Ware against Mrs. Ware").

Before the hearing judge and at oral argument before this Court, Respondent argued that there was no conflict because she was acting pursuant to MLRPC 1.14 (client with a diminished capacity) when she filed the second petition for guardianship to help secure a guardian to protect Mr. Wilson's interests. We recognize the difficult position an attorney may be in when representing a client with diminished capacity. For this reason, MLRPC 1.14 permits a lawyer to protect a client by "seeking the appointment of a guardian." But, in doing so, the lawyer may not represent the petitioner while continuing to represent the alleged disabled person because "the representation of one client will be directly adverse to another client." MLRPC 1.7(a)(1); *see Dayton Bar Ass'n v. Parisi*, 965 N.E.2d 268 (Ohio 2012) ("[Rule 1.14] does not authorize a lawyer to represent a third party in seeking to have a court appoint a guardian for his client. Such a representation would necessarily have to be regarded as 'adverse' to the client and prohibited by Rule 1.7(a), even if the lawyer sincerely and reasonably believes that such representation would be in the client's best interests[.]" (quoting ABA Comm. Ethics & Prof'l Responsibility, *Client Under a Disability*, Formal Op. 96-404 (1996))). Respondent's representation of both Mr. Griggs

31

and Mr. Wilson created a conflict of interest in violation of MLRPC 1.7(a).

**MLRPC 1.15 and Maryland Rule 16.606.1**

MLRPC 1.15(a) requires that all "[f]unds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter." Maryland Rule 16-606.1(a) requires an attorney to create and maintain records of certain information regarding the receipt and disbursement of client funds. The hearing judge concluded, and Respondent conceded, that she violated MLRPC 1.15(a) by failing to create and maintain records of her fees collected and disbursed in accordance with Maryland Rule 16-606.1(a). We agree. *See Attorney Grievance Comm'n v. Kobin*, 432 Md. 565, 582 (2013) (concluding that an attorney violated MLRPC 1.15(a) when he admitted his failure to comply with Maryland Rule 16-606.1).

**MLRPC 3.3**

MLRPC 3.3(a)(1) provides that a lawyer shall not intentionally "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." This Rule "is based on the idea that every court has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it." *Attorney Grievance Comm'n v. Smith*, 442 Md. 14, 34 (2015) (alteration and internal quotation marks omitted). Comment three to MLRPC 3.3 states that a lawyer's statement to the court "may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative

32

misrepresentation." *See also Attorney Grievance Comm'n v. Pak*, 400 Md. 567, 602 (2007) (concluding that an attorney's intentional failure to disclose material information violated MLRPC 3.3).

The hearing judge made a number of factual findings in connection with this charged violation and concluded that Respondent in several ways violated MLRPC 3.3 in her testimony in the fee case. Respondent excepts to every one of the hearing judge's findings of fact and conclusions of law in connection with that charge. She contends that her testimony before Judge Russell was truthful and, to the extent that any of her statements were false, Petitioner failed to prove that those misstatements were intentional or material.

The hearing judge found that Respondent made material misrepresentations and omissions to Judge Russell in the fee case. The most significant of those relate to her characterization of Mr. Wilson's mental capacity. Respondent misrepresented to Judge Russell that Mr. Wilson could "certainly deal with his day-to-day events and simple contracts," and implied that Mr. Wilson's only limitation concerned complex matters. The hearing judge found that Respondent intentionally omitted Dr. Lasson's findings that Mr. Wilson was unable to recall and understand basic information. The hearing judge found that Respondent's misrepresentation was made knowingly because she had personal knowledge of the extent of Mr. Wilson's diminished capacity and her position in the fee case was directly contrary to the position she advanced before the court in the divorce and guardianship cases. As a result, the hearing judge concluded that Respondent's conduct violated MLRPC 3.3.

Respondent excepts to this conclusion, maintaining that her testimony before Judge

33

Russell regarding Mr. Wilson's capacity was accurate. We disagree. Respondent's testimony that Mr. Wilson "can certainly deal with his day-to-day events and simple contracts" and "is very able to understand anything that one would tell him, and make an appropriate response" is entirely inconsistent with Dr. Lasson's opinion, of which Respondent had full knowledge, that Mr. Wilson was unable to recite the alphabet, count backwards from twenty, name the U.S. President, or recall "basic information" that "even a child would know." Respondent's testimony is also inconsistent with her argument before Judge Bailey in the divorce case in support of her motion to withdraw, namely that Respondent was unable to maintain a consistent strategy or discern what Mr. Wilson wanted because he could not remember her advice from one moment to the next.

Moreover, Respondent failed to submit as evidence in the fee case Dr. Siebert's report and Dr. Lasson's reports and testimony, and she omitted any reference to Judge Bailey's finding that Mr. Wilson was incompetent to enter into any legal agreement. Respondent instead submitted a report of Mr. Wilson's prior physician who opined that Mr. Wilson suffered from no mental disability. Those omissions, in tandem with her testimony of the substance of Dr. Lasson's and Dr. Siebert's reports, constituted a misrepresentation of Mr. Wilson's incapacity to Judge Russell.

We accept the hearing judge's finding that Respondent's misrepresentations were made intentionally, given that Respondent had personal knowledge of the extent of Mr. Wilson's diminished capacity and took a position in the fee case that was directly contrary to the position she advanced before the court in the divorce and guardianship cases. Respondent cherry-picked the information that benefited her and bolstered her position that

34

she was entitled to her fees, to the exclusion of all previous arguments she had made to the contrary. She did so knowing that her adversary was a former client with diminished capacity who was representing himself in that litigation. Such misconduct is a lack of candor that violates MLRPC 3.3.

Respondent contends that she did not violate MLRPC 3.3 because any misrepresentation was not of a material fact. Respondent points to Judge Russell's finding that Mr. Wilson was competent to enter into, and later ratify, the retainer agreement. We disagree. It defies reason to assume that Judge Russell concluded that Mr. Wilson was competent to enter into the retainer agreement based upon her own observations of him, without also taking into account Respondent's misleading testimony suggesting that he was generally capable of retaining and understanding information presented to him. Respondent's intentional misrepresentations, then, were material. Petitioner proved, by clear and convincing evidence, that Respondent violated MLRPC 3.3 in connection with her representation of Mr. Wilson's capacity in the fee case.

We further reject Respondent's argument that she "had no duty to take over Mr. Wilson's advocacy against herself" by "assert[ing] Mr. Wilson's defenses for him" or submitting evidence to support his defense. She relies for this proposition on *Winkler Construction Co. v. Jerome*, 355 Md. 231 (1999), in which we stated:

> We agree with the general statement that a party may not couch a pleading in a manner that is likely to mislead the court, and there is no doubt that attorneys have clear duties and constraints under Rule 3.3. Neither precept, however, requires a party or an attorney to assert an adverse party's defense, much less to produce evidence in support of it, when the party disputes that defense.

*Id.* at 245-46. Respondent's reliance on *Jerome* is misplaced. Respondent violated MLRPC 3.3 not because she failed to present evidence in the fee case in support of Mr. Wilson's defense, but because she made intentional misrepresentations to the court designed specifically to lead to a judgment in her favor. We agree with Petitioner that, "[o]nce the Respondent presented the issue of Mr. Wilson's mental competency to the District Court, her obligation under the MLRPC was to refrain from misleading the court about the issue or misrepresenting the evidence." Respondent altogether ignored this obligation and, in doing so, she violated MLRPC 3.3.

The hearing judge also found that Respondent made intentional misrepresentations to Judge Russell regarding the scheduling of Dr. Lasson's deposition in the divorce case. The hearing judge found that Respondent misrepresented the timing of Ms. Denrich's motion for protective order by testifying that Respondent had offered to reschedule the deposition after it had already taken place "since [Ms. Denrich] didn't show up," and only then did Ms. Denrich file the motion for protective order. The hearing judge found that Respondent's testimony was intentionally false because she had personal knowledge of when she received the motion for protective order, as evidenced by her response to it before the deposition on February 7, 2012. Based upon those misrepresentations, the hearing judge concluded that Respondent violated MLRPC 3.3.

Although Respondent concedes that she "undoubtedly misspoke" in her testimony on this point, she excepts to the hearing judge's conclusion nevertheless because, in her view, Petitioner failed to prove by clear and convincing evidence that she "knowingly misled the District Court." We overrule this exception. We do not accept that

36

Respondent's misrepresentations were mere "unintentional misspeaks" when she made statements to Judge Russell having personal knowledge of facts establishing that the opposite of those statements were true. The hearing judge's finding that Respondent's misrepresentations were intentional is supported by sufficient evidence and therefore is not erroneous, much less clearly so.

The hearing judge further found that Respondent testified falsely before Judge Russell that Ms. Stewart was present when Mr. Wilson signed the retainer agreement. The hearing judge found that testimony to be false, having credited Ms. Stewart's testimony to the contrary, and accordingly concluded that such testimony violated MLRPC 3.3. Respondent contends that she made no intentional misrepresentation because it is her recollection that Ms. Stewart was present at that meeting. We overrule Respondent's exception because the hearing judge expressly discredited her testimony in favor of Ms. Stewart's. "As we have stated, a hearing judge is free to disregard the testimony of respondent if the judge believed the evidence was not credible." *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 182 (2014) (internal quotation marks omitted). We defer to the hearing judge's credibility determination.

The hearing judge found, too, that Respondent failed to inform Judge Russell that she had opposed Mr. Wilson in the guardianship action and that Judge Bailey found Mr. Wilson incompetent. The hearing judge also found that Respondent failed to summarize sufficiently the "voluminous amount of material" before Judge Russell, who relied on Respondent as an officer of the court. In doing so, the hearing judge concluded that Respondent violated MLRPC 3.3.

Respondent admits that she did not explain to Judge Russell that she had filed an opposition in the guardianship or that Judge Bailey had found Mr. Wilson incompetent. She argues, however, that she did not violate MLRPC 3.3 in that respect because she was under no obligation to submit to Judge Russell every pleading she filed over the course of the representation or to summarize all of those pleadings. We overrule this exception because the information Respondent chose to omit was designed to persuade Judge Russell that Respondent's fees were reasonable. Respondent similarly contends that she did not have to summarize every filing because she presumed that Judge Russell reviewed all of Respondent's exhibits. We disagree. Respondent violated MLRPC 3.3 not because she did not summarize every exhibit submitted to Judge Russell, but rather because her summaries were inaccurate and were designed to mislead the District Court.

In sum, having accepted the hearing judge's findings of fact, we conclude that Respondent violated MLRPC 3.3 in several respects.[9]

## MLRPC 8.4(c)

MLRPC 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving fraud, deceit or misrepresentation." Similar to MLRPC 3.3(a)(1), this Rule prohibits a lawyer from making false statements. *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 707 (2013). "We have found a Rule 8.4(c) violation when

---

[9] Respondent claims error in certain of other factual findings made by the hearing judge in connection with the MLRPC 3.3 violation. It is unnecessary to address those claims because, even if we were to do so and determine that any one or more of the judge's additional findings were clearly erroneous, that determination would have no bearing on our conclusion that Respondent otherwise committed multiple violations of MLRPC 3.3.

a misrepresentation is overt or based upon a concealment of material facts." *Attorney Grievance Comm'n v. Barton*, 442 Md. 91, 142 (2015).

The hearing judge concluded that Respondent's intentional misrepresentations that violated MLRPC 3.3(a)(1) likewise violated MLRPC 8.4(c). In addition, the hearing judge found in connection with the divorce case that Respondent intentionally misrepresented to Mr. Wilson that Mrs. Wilson's attorney, Ms. Denrich, never objected to Dr. Lasson's deposition because Respondent admitted that Ms. Denrich in fact did object. Respondent also intentionally misrepresented to Judge Bailey in her opposition to Ms. Denrich's motion to strike that "Ms. Denrich again would not supply dates on which she would commit to being available for [Dr. Lasson's] deposition" because Respondent and Ms. Denrich had agreed upon a date for retaking the deposition. Finally, the hearing judge found that Respondent intentionally misrepresented to Judge Russell in the fee case that she filed motions regarding Dr. Siebert, the cancellation date of a hearing, and the substance of Dr. Siebert's opinion. Respondent takes exception to each of these factual findings, as well as the hearing judge's legal conclusion that she violated MLRPC 8.4(c). She asserts that her statements, even if false, were not proven by Petitioner to have been intentional.

Respondent has not persuaded us that any of these findings of fact or conclusions of law are erroneous, and we therefore overrule her exceptions. As with Respondent's violation of MLRPC 3.3, whether Respondent violated MLRPC 8.4(c) turns on whether her conceded misrepresentations were made intentionally. *See Smith*, 442 Md. at 33. Resolution of that question is largely a matter of credibility. We defer to the hearing

judge's determination in that respect, particularly "when it comes to assessing an attorney's state of mind as to an intent to deceive." *Id.* at 35. The hearing judge found that Respondent's misrepresentations were made intentionally. The hearing judge's findings in this regard are supported by the evidence that Respondent had personal knowledge of information that contradicted entirely her misrepresentations. Respondent's intentional misrepresentations to Mr. Wilson and Judge Bailey violated MLRPC 8.4(c).

## MLRPC 8.4(d)

MLRPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" The hearing judge concluded that Respondent's conduct that underlay her many violations of the MLRPC, including, most notably, her intentional misrepresentations to Judge Russell during the fee case, were prejudicial to the administration of justice.

Respondent excepts to that conclusion. She argues that the hearing judge "did not explain how Respondent prejudiced the administration of justice by attempting to collect a reasonable fee that she indisputably earned in accord with MLRPC 1.5."

We overrule Respondent's exception. A lawyer violates MLRPC 8.4(d) "when his or her conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Attorney Grievance Comm'n v. Reno*, 436 Md. 504, 509 (2014) (internal quotation marks omitted). Before Judge Russell, Respondent mischaracterized the mental capacity of her client, who represented himself in the fee case, in order to collect unreasonable fees. That some accurate information was buried in the exhibits before Judge Russell cannot remedy Respondent's oral misrepresentations before the court. Respondent

40

took a position before Judge Russell that directly contradicted her position regarding her client's diminished capacity before different tribunals in this State. Respondent, among other professional misconduct, engaged in representation that created a conflict of interest, charged and collected unreasonable fees, and made numerous intentional misrepresentations to her client and the courts. Respondent's conduct erodes the public's confidence in the legal profession and is prejudicial to the administration of justice in violation of MLRPC 8.4(d). *See Attorney Grievance Comm'n v. Williams*, 446 Md. 355, 375 (2016) (concluding that the respondent violated MLRPC 8.4(d) by "failing to comply with numerous court orders and then making misrepresentations to excuse his misconduct" (internal quotation marks omitted)).

### MLRPC 8.4(a)

MLRPC 8.4(a) provides that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]" The hearing judge concluded that Respondent violated Rule 8.4(a) because of her above-described violations of the Rules. "We have held that, when an attorney violates a rule of professional conduct, the attorney also violates MLRPC 8.4(a)." *Attorney Grievance Comm'n v. Young*, 445 Md. 93, 106 (2015) (internal quotation marks omitted). Respondent's violations of MLRPC 1.1, 1.2, 1.4, 1.5, 1.15, 1.7, 3.3, and 8.4(c) and (d) result in a violation of MLRPC 8.4(a).

### III.

It remains for us to decide the proper sanction for Respondent's misconduct.

41

Mindful that "the purpose of attorney discipline is to protect the public, not punish the attorney," *Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 527 (2015), we aim to impose a sanction "commensurate with the nature and gravity of the violations and the intent with which they were committed," *Good*, 445 Md. at 513 (internal quotation marks omitted). "We protect the public through sanctions against offending attorneys in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 372 (2006) (citations and internal quotation marks omitted). In determining the appropriate sanction, we likewise weigh the attorney's misconduct against any existing mitigating and aggravating factors. *Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 405 (2011).

The hearing judge found one aggravating factor: Mr. Wilson "is a vulnerable person, suffering from significant, ongoing cognitive and memory problems, resulting in diminished capacity."[10] The hearing judge also found in mitigation that Respondent has no prior disciplinary record; did not display a selfish motive; provided full and free disclosure during the disciplinary proceedings; cooperated during the disciplinary proceedings; provided character and reputation evidence; and expressed remorse for her conduct towards Ms. Denrich and for "relying too heavily on her memory during the Fee Case."

Petitioner excepts to the hearing judge's finding that Respondent did not display a

---

[10] The hearing judge referred to the aggravating and mitigating factors as set forth in *Attorney Grievance Commission v. Sperling*, 434 Md. 658, 676-77 (2013).

42

selfish motive and to the hearing judge's failure to address five other aggravating factors: that Respondent engaged in a pattern of misconduct, committed multiple offenses, has refused to recognize wrongful nature of her conduct, has substantial experience in the practice of law, and has displayed indifference to making restitution.

We sustain each of Petitioner's exceptions. *See Landeo*, 446 Md. at 350 (finding the presence of additional aggravating factors, not found by the hearing judge, based on the Court's own review of the record); *Coppola*, 419 Md. at 406 (sustaining Bar Counsel's exceptions regarding two aggravating factors). Respondent displayed a selfish motive by attempting to persuade Mr. Wilson to attest to his "sound mind" in writing. She further displayed a selfish motive by misleading the District Court in order to collect her fees. We agree with Petitioner that there "is no plausible motivation for making the misrepresentations and misleading statements to the court other than the Respondent's motivation to further her financial gain." Respondent displayed a pattern of misconduct from June 2010 to October 2013 by failing to act competently, acting contrary to her client's direction, charging unreasonable fees, and making intentional misrepresentations to her client and the tribunal. Respondent's pattern of misconduct resulted in multiple violations of the Rules. Respondent continues to refuse to recognize the wrongful nature of her actions and has shown indifference to refunding Mr. Wilson any money. Respondent has substantial experience in the practice of the law, having been admitted to the Bar in 1981.

We also disagree with the hearing judge that Respondent's "remorse" is a mitigating factor. Respondent's remorse for her conduct towards Ms. Denrich is irrelevant because

43

Respondent has not demonstrated remorse for her actions in representing Mr. Wilson, the party whom she harmed through her misconduct. Moreover, that Respondent regrets relying on her memory does not demonstrate remorse because, again, it reflects her failure to acknowledge that she engaged in any intentional misconduct. Although Respondent cooperated with Bar Counsel during these proceedings and submitted evidence of her good character, the aggravating factors in this case outweigh any facts in mitigation.

Upon our assessment of Respondent's misconduct and in light of substantial aggravating factors, we hold that disbarment is the appropriate sanction to be imposed in this case. Our cases have long established that, when an attorney's misconduct is characterized by "repeated material misrepresentations that constitute a pattern of deceitful conduct, as opposed to an isolated instance," disbarment follows as a matter of course. *See Attorney Grievance Comm'n v. Lane*, 367 Md. 633, 647 (2002). This rule is not limited to cases involving misappropriation or criminal conduct. When a pattern of intentional misrepresentations is involved, particularly those misrepresentations that attempt to conceal other misconduct by the attorney, disbarment will ordinarily be the appropriate sanction. In *Lane*, we disbarred an attorney who "failed to diligently act on his clients' behalf" and "compounded this failure by engaging in a pattern of deceitful and lying conduct designed to conceal his lack of diligence." *Id.* Similarly, in *Steinberg*, the respondent engaged in discovery tactics that resulted in sanctions being imposed on his client; made numerous misrepresentations to his clients, opposing counsel, and the court; and failed to put a contingency fee arrangement in writing, file a petition on behalf of a client, and communicate with his client and opposing counsel. 395 Md. at 374. We held

that "[s]uch a pattern of neglectful and deceitful conduct, coupled with the deceitful attempts to conceal Respondent's lack of diligence, merits disbarment." *Id.*; *see also Williams*, 446 Md. at 376 ("Respondent's actions to conceal his incompetence and lack of diligence from his client in an attempt to lead her and the courts to believe that he was acting in the best interests of the client cannot be tolerated.").

Respondent's actions in this case are marred by similar misconduct. Respondent failed to act competently and communicate adequately with her client. She engaged in unreasonably aggressive discovery tactics that resulted in sanctions imposed on Mr. Wilson, which were lifted only after a judge later determined that her client was incompetent. Respondent made a misrepresentation to Mr. Wilson to conceal the fact that her misconduct excluded the only available medical evidence that would have been required to support his claims. Finally, and most egregiously, Respondent lied to and deceived the court to the detriment of her former client for her own monetary gain.

We impose a sanction less severe than disbarment in cases of intentional misrepresentations only upon a showing of "compelling extenuating circumstances." *Steinberg*, 395 Md. at 375. Respondent has not offered, nor do we find, the presence of any extenuating circumstances, much less the compelling circumstances we require. Accordingly, we hold that Respondent's misconduct is deserving of the ultimate sanction.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR**

45

**OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RHONDA I. FRAMM.**